UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
JAMES K. BREDAR
UNITED STATES MAGISTRATE JUDGE
MDD_JKBChambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0950 OFFICE
(410) 962-2985 FAX

September 30, 2010

TO ALL COUNSEL OF RECORD

    Subject: *Henry Hawkins, Jr. v. Michael J. Astrue, Comm'r of Social Security*
         Civil Action No.: JKB-08-2736

Dear Counsel:

  On October 17, 2008, the Plaintiff, Henry Hawkins, Jr., petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Compl., ECF No. 1.) I have considered the parties' cross-motions for summary judgment. (ECF Nos. 13 & 46.) No hearing is necessary. Local Rule 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3). *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I am affirming the agency's decision, and I am writing this letter to explain my rationale.

## Background

  Mr. Hawkins's benefits applications[1] were based upon his claim of disability due to stress, anger, depression, and back and knee pain. (Tr. 39, 46.) His claim was denied initially and upon reconsideration. (Tr. 39, 46.) After receiving testimony at an administrative hearing and reviewing the medical evidence, the Administrative Law Judge ("ALJ") found that Plaintiff has severe impairments of posttraumatic stress disorder, depression, mild mental retardation, and headaches, but determined that none of Mr. Hawkins's impairments satisfied the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("LOI"). (Tr. 19-20.) The ALJ further determined that Plaintiff has the residual functional capacity ("RFC") to perform work at any exertional level that does not involve more than routine, repetitive, simple tasks with minimal interaction with others. (Tr. 21.) The ALJ concluded that Mr. Hawkins has no past relevant work. (Tr. 26.) However, taking into consideration his age, education, work experience, and RFC, the ALJ concluded that jobs that Plaintiff can perform exist in significant numbers in the

---

[1] Because his date last insured was computed to be September 30, 1994, and because Plaintiff's amended onset date of disability was February 14, 2005, the Administrative Law Judge concluded that Plaintiff was ineligible for Disability Insurance Benefits, but that he could be considered for Supplemental Security Income Benefits. (Tr. 17.) Plaintiff has not contested in this Court the dismissal of his DIB application.

national economy and that, therefore, he is not disabled. (Tr. 26-27.) The Appeals Council denied review. (Tr. 6-8.) Afterward, Mr. Hawkins filed suit for judicial review.

Plaintiff asks this Court to grant summary judgment in his favor or to remand for further proceedings. (Pl.'s Mot. Summ. J., ECF No. 13.) He makes four arguments:

1. The ALJ erred in failing to decide this case at step 3 of the sequential evaluation;

2. The ALJ failed to follow the treating physician rule;

3. The ALJ asked an improper hypothetical question; and

4. The ALJ's decision is not based on substantial evidence and is not without legal error.

(Pl.'s Br. 23, 26, 28, 29, ECF No. 13.)

Issue 1: Listing of Impairments

Plaintiff argues the ALJ should have found that his impairments meet LOI 12.04 (Affective Disorders) and 12.05.C and 12.05.D (Mental Retardation). The ALJ considered the requirements of LOI 12.04 and found Mr. Hawkins appears to exhibit the symptoms required by part A of this listing, but found he did not meet the requirements of either part B or part C, only one of which is necessary to meet LOI 12.04. Part B requires the presence of at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1. Part C requires a medically documented history of chronic affective disorder lasting at least two years and causing more than a minimal limitation of ability to do basic work activities, with symptoms or signs presently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

> 3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*

The ALJ relied upon evidence in the record to conclude that Mr. Hawkins has only a mild restriction in his activities of daily living attributable to a mental impairment. Specifically, the ALJ noted that Plaintiff is able to maintain a residence with his mother and sister, to provide some help with household chores, including laundry and ironing, and to prepare meals. The ALJ further found that Mr. Hawkins has moderate difficulty in social functioning and moderate difficulty in maintaining concentration, persistence, and pace. In this regard, the ALJ observed that Mr. Hawkins has a limited social life, but the record does not establish a serious incident, such as altercations or difficulties with authority figures. The ALJ also noted that Plaintiff goes grocery shopping, likes to shoot pool, walks outside, and visits with family and friends. Thus, the record does not show a marked level of limitation; additionally, the record contains no evidence of an episode of decompensation of extended duration. (Tr. 20.)

Plaintiff faults the ALJ's conclusion that Mr. Hawkins's impairments do not satisfy LOI 12.04 because he points to an opinion by a treating psychiatrist, Dr. Orlando Davis, that he had marked limitations in social functioning, marked limitations in concentration, persistence, or pace, and repeated episodes of decompensation. (Pl.'s Br. 24, ECF No. 13.) Although the ALJ did not discuss Dr. Davis's opinion in the portion of his written decision that dealt with LOI requirements, he did address it later in the section dealing with Plaintiff's RFC, and it is clear that his treatment of it there does not favor the Plaintiff's argument. The ALJ noted that Dr. Davis's opinion was expressed on a form[2] to which the ALJ could give little weight because the form makes no references to treatment records or explains the opinion expressed on it, citing SSR 96-2p. The ruling to which the ALJ referred emphasizes, "A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion." In addition, the ALJ pointed out that the psychiatrist's treatment records do not reflect symptoms that would prevent performance of the simple tasks specified in the RFC. The ALJ's conclusion that Mr. Hawkins's impairments do not satisfy LOI 12.04 is supported by substantial evidence in the record.

The ALJ also considered LOI 12.05. This listing describes mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" and necessitates evidence demonstrating or supporting onset of the impairment before age 22. 20 C.F.R. Part 404, Subpart P, Appendix 1. Mr. Hawkins was approximately 37 years old at the alleged onset date of disability, February 14,

---

[2] Defendant points out that the form used by Dr. Davis is not a standard form generated by the Social Security Administration and, further, that the form only offers two options: no limitation or marked limitation, with no definition provided for marked limitation. (Def.'s Supp. Mem. 10-11, ECF No. 46.)

2005. The ALJ noted that, in a consultative examination in June 2006, Plaintiff reported he had completed 9th grade but could not remember if he had been in special education (Tr. 20, 155-56), although in another consultative examination a year earlier, he said his "education is tenth grade"[3] and denied any special education (Tr. 131). At the hearing, Mr. Hawkins testified he completed eighth grade. (Tr. 20, 220.) The ALJ found that Plaintiff obtained his driver's license at an early age, still has it, and can still drive. (Tr. 20, 156.) The ALJ additionally observed that Plaintiff had engaged in substantial gainful activity as evidenced by several brief jobs, including jobs at a car wash and a supermarket as well as at McDonald's. (Tr. 20, 121, 156, 223.) Moreover, Plaintiff acknowledged his ability to pay bills, count change, handle a savings account, and use a checkbook. (T. 20, 109.) The ALJ concluded that Mr. Hawkins had failed to meet the requirement that he have manifested, during the developmental period, significantly subaverage general intellectual functioning with deficits in adaptive functioning. (T. 20.)

In this Court, Plaintiff takes issue with the ALJ's conclusion as to LOI 12.05 and relies upon certain standardized test results and the recognition by the ALJ that Mr. Hawkins has other severe impairments. Therefore, according to Plaintiff's argument, he satisfies the "C" requirements of LOI 12.05. (Pl.'s Br. 25, ECF No. 13.) In addition, he claims the "D" requirements of LOI 12.05 are satisfied based upon his IQ score, Dr. Davis's opinion that Mr. Hawkins has marked limitations in various areas of functioning, and a notation on a form called "Request for Medical Advice": "Recommendations: Meets 12.05 D2, D3," followed by a handwritten notation: "agree with psy consultant" and undecipherable initials. (*Id.* at 25-26; *see* Tr. 162.)

In the introductory note to the section on mental disorders in the Listing of Impairments, the Commissioner of Social Security has described the proof requirement of LOI 12.05:

> If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00A (emphasis added).

> LOI 12.05.C sets forth the following criteria:
>
> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> LOI 12.05.D requires the following be established:
>
> A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

---

[3] The ALJ mistakenly said "ninth grade." (Tr. 20.)

>   1. Marked restriction of activities of daily living; or
>   2. Marked difficulties in maintaining social functioning; or
>   3. Marked difficulties in maintaining concentration, persistence, or pace or
>   4. Repeated episodes of decompensation, each of extended duration.

*Id.*

It is observed that the enumerated criteria in LOI 12.05.D are identical to those of 12.04.B, *supra*. Since the ALJ concluded, based on substantial evidence on the record, that Mr. Hawkins did not satisfy LOI 12.04.B, it must also be concluded that he does not satisfy LOI 12.05.D. Therefore, the only question remaining as to Issue 1 is whether Mr. Hawkins satisfies the requirements of 12.05.C.

The ALJ noted that Plaintiff's intelligence was tested in 2006 and that he had a verbal IQ of 68, a performance IQ of 63, and a full scale IQ of 63, which placed him in the mild range of mental retardation. (Tr. 24.) Further, the ALJ had already determined that Mr. Hawkins had other severe impairments, thus satisfying the criteria of LOI 12.05.B. However, the ALJ also determined that Plaintiff did not meet the diagnostic description of mental retardation in the introductory paragraph of LOI 12.05, i.e., "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" (before age 22). (Tr. 20.) The ALJ relied upon several considerations to arrive at this conclusion. Specifically, he noted the satisfactory progress Mr. Hawkins made while he was in school and the lack of evidence that he had been in special education classes.[4] Additionally, the ALJ noted that Plaintiff had received his driver's license at an early age and still has it. His brief periods of employment demonstrated his capacity to perform substantial gainful activity. Further, he acknowledged his ability to pay bills, count change, handle a savings account, and use a checkbook. Finally, the evidence supported his ability to maintain himself independently. (*Id.*) Thus, even though the ALJ recognized that Mr. Hawkins is limited by low intellectual functioning, the ALJ concluded that this fact reasonably may be expected to limit his ability to perform all but the simplest of tasks, consistent with the RFC assessed by the ALJ. (Tr. 20-21.)

To support his argument that the ALJ's conclusion was in error, Plaintiff points to an opinion expressed by an examining, consultative psychologist, Dr. Janet Anderson:

> Since Mr. Hawkins describes himself as a poor student in school, he could never learn to read well most likely that his IQ has always been low.
> . . .

---

[4] The ALJ indicates that Mr. Hawkins's school records are part of the record transmitted to this Court, but they, in fact, are missing. However, Plaintiff does not argue that anything in the records, to which reference was made by Mr. Hawkins and the ALJ at the administrative hearing, contradicts the findings drawn therefrom by the ALJ. Consequently, the omission seems immaterial to the outcome of the case.

> Certainly was not known why this man appeared to have such a severe memory disorder or whether or not he has been mentally retarded all of his life. Given his reports about school, he could never learn to read well. It is likely he probably always was mentally retarded, but the memory difficulties may have come later ?

(Tr. 157-58 (sic).)

While noting the opinion of Dr. Anderson,[5] the ALJ placed greater reliance on the reports of other consultative psychologists who opined that Mr. Hawkins retained the capacity to perform simple tasks in settings with limited social interactions. (Tr. 24.) This conclusion governed even when one of the psychologists, Dr. Michael Oidick, had checked moderate limitations on a functional assessment form because that same psychologist's written assessment was consistent with the RFC as determined by the ALJ. (Tr. 24-25, 163-65, 176-78.)

Plaintiff further relies on his self-reported, limited reading ability and his repeated incarcerations as evidence of his deficits in adaptation back to his developmental period. (Pl.'s Br. 25.) Neither of these is a compelling consideration. Reading ability, or lack thereof, is not conclusively shown by Plaintiff to be strictly a function of intellectual capability. It is possible to surmise that other factors affecting one's ability to read can be quite independent of IQ; for example, an unaddressed need for visual correction and a learning disability not overcome by school instruction are two that come readily to mind. As for Mr. Hawkins's time in prison, the Court observes that his sentence for robbery began in 1996, when he would have been no younger than 25 or 26. Moreover, Plaintiff has not suggested, much less established, that he committed crimes because of his intellectual ability. This is no evidence at all of deficits in adaptive functioning before the age of 22.

The ALJ's conclusion that Plaintiff did not meet the Listing of Impairments is supported by substantial evidence in the record.

Issue 2: Rejection of Treating Physicians' Opinions of Plaintiff's Functional Limitations

Plaintiff contends the ALJ erred by failing to give controlling weight to the opinions of Dr. Davis and Dr. Thomas Lacey. Under governing regulations, the Defendant will give controlling weight to the medical opinion of a treating source if the opinion on the nature and severity of a claimant's impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, an individual's ability to work and his residual functional capacity are issues expressly reserved to Defendant.

---

[5] The ALJ did not specifically comment on the portion of Dr. Anderson's opinion that Plaintiff "likely . . . probably always was mentally retarded." It is clear that Dr. Anderson's opinion, to the extent it may be considered such, was based on what Plaintiff had told her about his educational background.

20 C.F.R. §§ 404.1527(e), 416.927(e). Accordingly, no special significance is to be given to the source of an opinion on such an issue. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3); SSR 96-5p ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance"). Even so, "[i]n evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)." SSR 96-5p.

Thus, the ALJ is required to evaluate a treating physician's opinion in light of the examining relationship, the treatment relationship (the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship), supportability of the opinion by reference to relevant evidence (especially medical signs and laboratory findings), consistency of the opinion with the record as a whole, specialization of the physician in relation to the opinion, and other factors, brought to the ALJ's attention, that tend either to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d).

Dr. Davis's opinion, as expressed by checked boxes on a form, was previously noted herein as reasonably rejected by the ALJ because it was unsupported by treatment records showing symptoms that would account for "marked limitations" in functioning. Dr. Lacey opined on February 7, 2005, that Mr. Hawkins was mildly restricted in activities of daily living and in maintenance of social functioning; that he seldom had difficulties in maintenance of concentration, persistence, or pace; that he had one or two repeated episodes of decompensation, each of extended duration; that he had no known physical limitations for sitting, standing, walking, climbing, carrying, bending, squatting, reaching, and crawling; but that the heaviest weight Mr. Hawkins can lift or carry is less than ten pounds, while the weight he can lift or carry frequently is ten pounds. (Tr. 115-16.) The ALJ found the "somewhat sketchy notes" of this physician[6] referred to Plaintiff's complaints of knee, back, and hand pain and his depression, but the physical examination was essentially unremarkable. (Tr. 22.) Thus, to the extent Dr. Lacey's form opinion could be read as supporting disability, the ALJ declined to give it controlling weight because the physician's treatment notes do not support disabling impairments and the form makes no reference to the treatment notes; also, Dr. Lacey did not provide an adequate explanation for his conclusions. (*Id.*) The ALJ's determination is supported by substantial evidence in the record.

Issue 3: Hypothetical Question

Plaintiff's argument that the ALJ posed an improper hypothetical question to the vocational expert is predicated on his earlier, unprevailing argument that Mr. Hawkins is unable to perform simple instructions because of mental limitations. (Pl.'s Br. 28.) This extension of his prior argument is also without merit.

---

[6] The ALJ referred to the doctor by the stamped name on the form, Hollis Seunarine, M.D., but the handwritten name is that of "Lacey." (Tr. 22, 117.) The analysis is unaffected by the name of the doctor.

Issue 4:  Decision Based on Substantial Evidence

Plaintiff takes issue with the ALJ's conclusion that his headaches are not severe enough to cause severe physical limitations. (Pl.'s Br. 29.) The ALJ gave little credence to Mr. Hawkins's testimony about the disabling effects of his headaches because the ALJ determined that no documentation existed to support a finding of headaches severe enough or frequent enough that they would prevent sustained work. (Tr. 26.) Credibility choices are within Defendant's province as the finder of fact. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). The Court sees no reason to disturb the ALJ's credibility choice in this instance.

Plaintiff's last contention is that the ALJ erred in rejecting the vocational expert's testimony premised upon the hypothetical question posed by Mr. Hawkins's attorney at the administrative hearing. (Pl.'s Br. 30.) This argument refers to the psychological consultation of Dr. Oidick, discussed *supra* in relation to whether Plaintiff meets LOI 12.05.D. As earlier noted, the ALJ relied upon the narrative assessment of Dr. Oidick more than the checked boxes on the forms. (Tr. 24-25.) The ALJ properly resolved this conflict in the evidence, *see Craig*, 76 F.3d at 589 ("'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)'" (citation omitted)), and his decision to frame the substance of Dr. Oidick's narrative assessment in the hypothetical question to the vocational expert and not to rely upon the vocational expert's testimony in response to Plaintiff's hypothetical question based upon Dr. Oidick's form's checked boxes is supported by substantial evidence in the record.

Conclusion

For the foregoing reasons, the Court will enter a separate order AFFIRMING the agency's decision, DENYING Plaintiff's Motion for Summary Judgment, and GRANTING Defendant's Motion for Summary Judgment.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed accordingly.

Very truly yours,

/s/

James K. Bredar
United States Magistrate Judge

JKB/jh